UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Cr. No. 07-011 (RCL) |
| ) | |
| DANIEL C. SANTINI, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR TRANSFER FOR TRIAL**

Daniel Santini, through undersigned counsel, respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 21(b), for a transfer for trial to the jurisdiction where Mr. Santini resides. As grounds for this motion, counsel states:

1. On January 16, 2007, a five count Indictment was filed against Mr. Santini charging him with: Count One - Conspiracy, in violation of 18 U.S.C. § 371; Count Two - Access Device Fraud, in violation of 18 U.S.C. § 1029(a)(2); Count Three - First Degree Theft, in violation of 22 D.C. Code § 3211, 3212(a); Count Four - Uttering a Forged Instrument, in violation of 22 D.C. Code § 3241(b), 3242(c); and Count Five - Blackmail, in violation of 22 D.C. Code § 3252.

2. As the Court may recall from the previous motions to continue the arraignment date, Mr. Santini resides in Ohio and suffers from significant and life-threatening medical issues that include, but are not limited to, congestive heart failure, renal failure, and diabetes.

3. In light of these serious medical ailments, undersigned counsel has obtained various medical records from hospitals and doctors in Ohio to corroborate his condition. Specifically, a letter written by Mr. Santini's cardiologist was obtained and provided to the government that stated, Mr. Santini's heart condition had not improved and as a result he is not

advised to travel outside his hometown, Youngstown, Ohio. Undersigned counsel has shared all relevant medical records with the government. In August 2007, one of Mr. Santini's cardiologists indicated that Mr. Santini has a "significant estimated five year morality, probably in the range of 50%."

4. At the last status hearing in this case, on September 13, 2007, undersigned counsel advised this Court and the government that all relevant medical records have been turned over to the government for their review. Further, the government wanted information from Mr. Santini's medical doctors to make assessments about Mr. Santini's ability to sit at counsel's table for trial purposes, etc.. At this hearing, undersigned counsel advised that Mr. Santini's medical doctors did not feel comfortable making representations about his status that were not directly related to Mr. Santini's cardiology care.

5. On October 5, 2007, the government filed a motion requesting a judicial summons for Mr. Santini to appear for arraignment on October 26, 2007, at 9:30 a.m.

6. On October 5, 2007, this Court granted the government's motion for a judicial summons and ordered that Mr. Santini appear for his arraignment on October 26, 2007, at 9:30 a.m.

7. On October 23, 2007, an investigator employed with the Federal Public Defender's Office of the Northern District of Ohio went to visit Mr. Santini at his residence in order to obtain information about his current medical conditions. As a result of that meeting, the investigator has submitted a declaration in support of a Rule 21 transfer to the Northern District of Ohio. This declaration is attached to this motion as an exhibit.

8. Upon receiving this declaration, undersigned counsel is now requesting transfer of

this case to the Northern District of Ohio pursuant to Rule 21 of the Criminal Procedure. Rule 21(b) states that "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Rule 21(d) of Criminal Procedure states that "this request can be made at or before the arraignment."

9. In light of the observations made by the declarant articulated in the attached declaration, all of the medical documentary evidence that is in the possession of the government, in addition to the grave and undisputed medical condition Mr. Santini finds himself facing, undersigned counsel requests transfer of this case to the jurisdiction of the Northern District of Ohio, Youngstown Division.

10. Mr. Santini resides in Boardman, Ohio, which is approximately eight miles to Youngstown, Ohio. There is a federal courthouse located in Youngstown, Ohio. Mr. Santini seeks the majority of his medical care in Youngstown, Ohio, and is driven to that general location a few times a month. Therefore, it would appear that Mr. Santini would be able to appear for court appearances in Youngstown, Ohio. As stated in the investigator's declaration, Judge Economus is the judge assigned to that courthouse.

11. WHEREFORE, in the interest of justice, in addition to the interest in Mr. Santini's grave medical conditions, Mr. Santini respectfully requests that his case be transferred to the Northern District of Ohio - location Youngstown, Ohio.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>DANIEL C. SANTINI, )<br>)<br>Defendant. ) | Cr. No. 07-011 (RCL) |

### DECLARATION IN SUPPORT OF RULE 21 TRANSFER TO
### THE NORTHERN DISTRICT OF OHIO

I, Steve Gambetta, hereby state that I am an investigator employed by the Federal Public Defender for the Northern District of Ohio. Pursuant to a request from the Washington D.C. Office of the Federal Public Defender, specifically, Assistant Federal Public Defender, Dani Jahn, I am providing the following information relating to Daniel C. Santini.

On October 23, 2007, I arrived at the the residence of Daniel Santini, located at 8120 Stadler Avenue, Apartment #3, Boardman Ohio. The purpose of the visit was to conduct follow-up investigation for the Washington, D.C., Office of the Federal Public Defender. The contents of this declaration are based on my conversation with Mr Santini as well as my personal observations made on October 23, 2007.

Mr. Santini resides in a two-story, six-unit apartment building. Mr. Santini's apartment - apartment #3 - is located on the ground floor. Upon my arrival, I observed that the outer door to the apartment complex was locked and that entry could only be gained by having one of the tenants "buzz" you in. I had spoken with Mr. Santini prior to my arrival on October 23, 2007, via phone and he was expecting me. I buzzed his unit. I waited approximately 3-4 minutes until the outer door was unlocked and I entered the building. Once inside the apartment building, I

observed Mr. Santini standing by his doorway. He began to apologize for the delay and began to tell me that he was lying in bed and that he has a hard time walking to the door where the buzzer was located. As Mr. Santini spoke, I noticed that he was experiencing a shortness of breath and would only speak a couple of words before he had to try and take a deep breath and then continue on with his sentence. Mr. Santini also told me that he was not feeling well and that he needed to get back into his bed to lie down and try to regain some strength as well as catch his breath.

When I entered the apartment, I observed that Mr. Santini was dressed in a bathrobe and pajamas. He was using a walker to assist him towards his bedroom. Additionally, I noticed that Mr. Santini was wearing a oxygen line which was connected to a large oxygen producing machine located in the living room. It appeared that there was approximately 75 feet of hose attached to the main unit. As we proceeded down the hallway to the bedroom, Mr. Santini moved very slowly with the assistance of the walker. After taking a couple of steps, he would stop and I would observe him trying to take a deep breathe of air. This hallway was approximately 35-40 feet in length and we had to stop numerous times.

Once inside his bedroom, Mr. Santini immediately laid down on his bed and I once again observed him trying to take some deep breaths. I observed inside the bedroom, 2 large oxygen tanks and a box containing approximately 10 smaller oxygen tanks, 4 hand held male urinals, 1 portable toilet , approximately 20 pill vial containers, water and other assorted medications. It appeared to me that Mr. Santini was basically living out of his bedroom.

Mr. Santini began to explain to me his current and past medical problems. Additionally, he wanted me to be aware that he has been experiencing hearing loss in his right ear. He pointed to the pill vials and reported that he takes approximately 6-8 medications a day. He also wanted

me to be aware that he is sometimes unable to get out of bed for a couple of days and pretty much is forced to live within the confines of his bedroom.

I spoke with Mr. Santini about any assistance he was receiving. He related the following information. He receives financial assistance through federal and state programs. Additionally, the state was providing him with a individual who used to come in one day a week and cook and clean for him. Members of his church would also assist him by providing him transportation to his doctor visits. Mr Santini indicated that his medical condition has worsened in the last year and because of this, the state now provides a individual 3 times a week to come into the Santini residence to cook, clean, wash and do any shopping that is necessary. Mr Santini still cannot drive & is dependent on the church members to get him to his doctor appointments. He reports that he only gets out of his residence once every ten days and that is to see one of his doctors. He does not leave the home any other times. He is required to have his oxygen 24 hrs., seven days a week. When he is outside the home, he needs the assistance of a wheel chair to get around.

I took pictures of the apartment building, Mr Santini, the bedroom, the walker and oxygen machine. Mr Santini also provided me with some current medical reports. He told me that he is considering having a fibrillator installed and/or also a candidate for a heart transplant.

As I mentioned to you in previous conversations, there is a federal courthouse located in Youngstown. Judge Economus and Magistrate Limbert are permanently assigned to this courthouse. I did a mapquest search from the courthouse to the defendants residence and the two locations are 7.7 miles apart with a drive time of approximately 18 minutes. Based on conversations with the defendant, he is driven into Youngstown for his doctor visits. Though I am not a medical doctor, it would seem reasonable for Mr. Santini to be transported to the

Youngstown courthouse. I also want to mention when I spoke to the defendant about flying to Washington D.C. for this case, he became extremely upset and appeared to be having a mild panic attack. He expressed a great fear of the possibility of a medical emergency occurring. He felt that there would be a lack of medical assistance while in flight and ultimately his death could occur.

Attached to this declaration are the photographs which I took during my interview of Mr. Santini on October 23, 2007.[1]

I declare under penalty of perjury that the foregoing is true and correct.

10/24/07
Date

Steve Gambetta

---

[1] These photographs are being filed under seal in a separate filing due to the sensitive nature of what is depicted in these photographs.

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**   ) | |
| )  | |
| vs.   ) | Cr. No. 07-011 (RCL) |
| )  | |
| **DANIEL C. SANTINI,**   ) | |
| )  | |
| **Defendant.**   ) | |

### ORDER

Upon consideration of the Motion for Transfer for Trial, and in light of the entire record in this matter, it is hereby

**ORDERED** that the motion is granted.

**IT IS SO ORDERED** this _____ day of _____, 2007.

THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT COURT JUDGE

Copies to:

Dani Jahn
Assistant Federal Public Defender
625 Indiana Ave., N.W., Ste. 550
Washington, D.C. 20004

Howard Sklamberg
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20531